848

Merino Rodríguez Hnos., *S. en C.*, Plaintiff and Appellee, *v.* Juan Font Suárez, Defendant and Appellant.

No. 8215. Argued April 24, 1941.—Decided June 11, 1941.

*E. Font Suárez* and *Diego O. Marrero,* for appellant. *Orlando J. Antonsanti,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The limited partnership Merino Rodríguez Hermanos brought an action in the Municipal Court of San Juan, (Third Section) against Dr. Juan Font Suárez, a dentist, for

the collection of $389.49, interest and costs, and the court rendered judgment in its favor.

The defendant appealed to the district court, which also rendered judgment against him. He then appealed to this Court, alleging that two errors had been committed: First, that the trial court was moved by bias, prejudice or partiality in its weighing of the evidence, and second, that the court illegally admitted in evidence the bills sent by the plaintiff to the defendant.

The second and third averments of the complaint read as follows:

"2.—That in his dealing with the plaintiff, the defendant had a current account with the plaintiff covering certain materials and hardware articles which were ordered and received by the defendant, and supplied by the plaintiff, and this account shows a balance in favor of the plaintiff of $389.49, an amount which is due, demandable, and a liquid sum.

"3.—That in order to collect the above mentioned sum of $389.49, the plaintiff has taken innumerable steps and has demanded payment from the defendant innumerable times, but notwithstanding this, said sum has never been paid either totally or partially, by the defendant nor by anybody else in his name."

The defendant replied to this averments as follows:

"2. With respect to the second paragraph of the complaint, the defendant denies that his current account with the plaintiff shows a balance in favor of the latter amounting to $389.49. And on the contrary, he alleges according to his best belief and information, that the sum owed by him amounts merely to $50.

"3. That defendant alleges that in order to guarantee the debt contracted by him with the plaintiff, he signed some notes, a few of which he paid when they matured and the reason that he refused to continue paying the remainder of the debt was that the plaintiff refused to show the defendant the remaining notes executed by the latter in favor of the plaintiff, as we have already said."

And as a new matter, he alleged:

"That the plaintiff is trying to collect from the defendant a certain debt contracted by Mrs. Berta Vilá Font which amounts to

$304.43, and which she has already partially paid, by including it in defendant's debt for building materials sold by the plaintiff, used in a building which defendant was constructing in the extension of Simón Bolívar Street of Santurce, this debt being guaranteed by Mrs. Vilá Font through promissory notes executed in favor of the plaintiff and through the execution, together with the plaintiff, of a contract of conditional sale. That Mrs. Vilá Font owed to the defendant a certain sum of money and in accordance with an agreement reached between her and the defendant, she took from the plaintiff, on account, materials for the above mentioned sum of $304.43, in order to pay to the defendant the money which she owed him. That the building materials bought on credit from the plaintiff by Mrs. Vilá Font were delivered to the defendant to be used in the building which he was constructing in the extension of Simón Bolívar Street of Santurce.''

After studying the record and the briefs we are of the opinion that appellant's contention is correct. The evidence shows in our opinion that the new matter alleged in his answer by the defendant is true, and said matter consti-tutes a perfect defense.

 Berta Vilá Font, when called to the witnesses' stand during the trial, testified as follows:

''A.—The facts are that I had a needlework establishment and had to buy some machines and since I did not have enough money, I borrowed $300 from my brother-in-law; some time passed and I could not pay him because business was bad and then he began to build and naturally he asked me for his money in order to invest it in the building and I could not pay it back and then I told him: 'Well, I am going to open an account in an establishment which sells building materials and you can use them and in that way give me an opportunity to pay my debt in monthly installments, since I can't pay it all at once.' He agreed, and I went to Merino's es-tablishment, talked with Mr. Herrero there and he introduced me to Mr. Vélez there and I signed a credit application and I was told that they would answer me by phone. The next day they called me and I went there where they told me that they would extend me credit, and then I signed a contract of conditional sale and some promissory notes and then went home after giving them my address, where I told them the promissory notes would be paid, and after giving them instructions to send the materials to Condado Street.

"Q. To whose house?

"A. To Dr. Font Suárez' house.

"Q. Will you please see if this is the. document which they presented for your signature?

"A. Yes, sir.

"Q. And in connection with this document, did you sign some promissory notes?

"A. Yes, sir, to be paid every month in different amounts."

The document was offered in evidence, and Mrs. Vilá's testimony was corroborated by the defendant, who testified as follows:

"With respect to my account, which was merged with the amount owed by Mrs. Vilá to myself, I must say that I had lent some money to Mrs. Berta Vilá, my sister-in-law, to be used in a needlework shop that she had. Later on I had to build a house and of course, I needed all the money I could get, and I asked my sister-in-law whether she could pay me the money in cash and told her: 'Well, you could get in a hardware store some plumbing, wires, building materials and you could buy them and deliver them to me, thereby paying your debt,' and in that way her debt was in effect paid."

These being the facts, we do not understand how the trial court could reach the conclusion that the contract executed by the plaintiff and Mrs. Vilá Font was a contract of surety of defendant's account.' Mrs. Vilá and the plaintiff contracted directly and independently and that this was the construction which the plaintiff itself gave to the contract is revealed by the letter that the latter sent to the former, and which was offered in evidence by the defendant at the trial. Said letter reads as follows:

"Mrs. Berta Vilá Font, Santurce, P. R.—Madam: We wish to call your attention again to the fact that your debt, although fallen due, has not been paid, and to that effect we suggest that you visit us in order to reach an agreement on this question, since you have outstanding five notes which have not been paid, mounting to $136. As you will remember, a contract of conditional sale was executed by you and we wish to avoid having to refer this matter to our legal department for further action. We are sure that you will realize

how patient we have been in our attempts at collecting this debt and in return we request your attention to this matter in order to try to settle this question out of court. We await your advice and we remain, sincerely yours, R. V. Credit Department. RV/hma.''

It was only when the plaintiff could not collect his account from its debtor that it tried to collect it from the defendant, who had received the materials. But the fact that the defendant received said materials and he did it openly, signing all the invoices, does not mean that he assumed the obligation of paying the plaintiff for said materials. This certainly, in its peculiar terms, is not a common transaction, but borrowing money to pay debts which had fallen due, is a current transaction, independent contracts being executed when this is done, and this in reality was what took place in this case.

The judgment appealed from must be reversed and in its place, judgment must be rendered dismissing the complaint, with costs, including $100 for attorney's fees.

### ON REHEARING

Argued July 22, 1941.—Decided July 23, 1941.

The judgment rendered in this case was reversed and in its place, judgment was rendered against plaintiff appellee on June 11. On the 20th of the same month, the plaintiff appellee filed a motion for rehearing; and the hearing of said motion was set for the 22nd of July, it being understood by the parties that if the court decided to grant the reconsideration either wholly or in part, it would not only grant said reconsideration but would render judgment in accord with the facts and the law.

The hearing was held on the appointed day. With respect to the question that the contract executed by the plaintiff and Mrs. Vilá Font was not one of surety for the account which the defendant had with the plaintiff and as a consequence thereof, that the plaintiff had no right to merge said account with the balance unpaid on the contract,

our criterion is the same. All that we said therefor in our opinion of June 11, 1941, still stands.

But in said opinion we failed to consider and decide the effect which the second and third averments from defendant's answer might have on the final decision of the case. By virtue of these two averments which are copied in our opinion, defendant admitted that according to his information and belief, the sum which he owed the plaintiff mounted to $50, and alleged that the reason why he failed to pay was that plaintiff refused to show him the remaining notes signed by him, and this issue requires consideration and decision.

The defendant himself in the course of his testimony at the trial, said:

"A.—Before suit was brought, Mr. Frontera visited my house and gave me a bill which amounted to about $107 more or less.

"Q.—You remember on what date he gave you that bill?

"A.—No, I don't remember the exact date, but Mr. Frontera gave me that bill and I was sure that I did not owe that amount to the firm of Merino Rodríguez & Hermanos and I had proof, a letter from Mr. Vélez written to me before the bill had been made out, in which he charged me with the amount of $50. I told him that I had signed some notes in favor of the Merino firm amounting to about $125 and my belief was in accord with correspondence exchanged with Mr. Vélez, the Chief of the credit section, that I only owed $50 but that if they showed me new notes signed by me I would answer for whatever notes were so signed . . .

" * * * * * * *

"Q.—Do you deny having received that merchandise?

"A.—No, I do not deny having received that merchandise because I have already told them that the merchandise was delivered to me through a current account opened by Mrs. Berta Vilá in order to pay some money which she owed me.

Q.—Then when Mrs. Font's credit with Merino Hermanos was exhausted . . .

"A.—At that time I needed some more materials and I opened a current account because of the friendship which now existed, and was granted a credit with a limit of $125."

What the answer admitted was therefore upheld and explained by the evidence offered at the trial.

With respect to the promissory notes which it is alleged were signed and whose nondelivery was the cause of defendant's refusal to continue paying this debt there is no clear evidence in the record. The evidence for the plaintiff mentions certain notes signed by Mrs. Vilá, which employee of the plaintiff said he collected from the defendant and then lost them, as a result of which a notice was published in "El Mundo" but there is no evidence concerning any notes signed by the defendant.

At all events, even though the notes had actually been signed, they would only be the outward symbol of the debt which the defendant had the duty of paying, of course it being clear that after payment the notes become ineffective.

Having reached these conclusions, what should the decision of this court be?

There is no doubt at all that the reconsideration requested lies with respect to the point above stated, since although the defendant is not bound to pay the debt contracted by Mrs. Vilá with the plaintiff, he does have to pay his own debt, whose balance in plaintiff's favor he himself admitted was $50.

That being so, we must render a new judgment releasing the defendant from all liability for the balance of Mrs. Vilá's account, which was wrongly merged with his, but condemning him to pay the sum of $50.

█ It is obvious that there will be no award of attorney's fees, since the defendant was not obstinate in defending himself, but the judgment will have to include the costs of the proceeding having in mind the mandatory provisions of the statute. Section 327 of the Code of Civil Procedure as amended by Act No. 69 of 1936, page 352; *Hance v. R. Méndez & Hno.*, 54 P.R.R. 671.

If the defendant had not merely done what he did but had taken steps in harmony with the procedure established

by Section 336 of the Code of Civil Procedure, then not only would he not have to pay the costs of the proceeding but the plaintiff would have been obliged to pay them.

For these reasons, the judgment rendered on June 11 must be reconsidered and in its place judgment must be rendered condemning the defendant to pay to the plaintiffs the sum of $50, as balance of the debt claimed in the complaint, and as a result, any note signed by the defendant in acknowledgment of the same is hereby cancelled, and costs are imposed on the defendant, but not attorney's fees.